SWAN-FINCH OIL CORPORATION AND STANDARD OIL COMPANY OF NEW JERSEY, PLAINTIFFS-RESPONDENTS, v. WARNER-QUINLAN COMPANY, DEFENDANT-APPELLANT.

Submitted February 16, 1934—Decided April 12, 1934.

For the defendant-appellant, *John Milton*.

For the plaintiffs-respondents, *Arthur T. Vanderbilt*.

The opinion of the court was delivered by

BODINE, J. The defendant appeals from a judgment in behalf of the plaintiffs. The case was tried without a jury and the damages in the event of a recovery were stipulated.

The defendant possessed an oil refinery on the west side of Staten Island Sound. On the water side of the plant is a dock for the receipt of crude petroleum. Beyond the vacant land to the south is the plant of the American Cyanamid Company. Beyond the vacant land to the north lies the plant of the Sinclair Oil Refinery. Beyond the Sinclair plant is that of the Grasselli Chemical Company, and beyond it the docks and plants of the plaintiffs—oil refiners.

On the afternoon of September 13th, 1929, the wooden barge, "James Horan," chartered by the defendant, was used to bring a cargo of crude oil to the defendant's dock from the steel tanker "Cecil County," lying in the Sound. The barge, an old one, had a single wooden hold and was

moored to a wooden dock. Early the next morning she was observed to be on fire. The night superintendent had ten men available. He procured a hose and ran a fire stream through to the dock. He telephoned the New York fire department and finally cut the barge loose. The wind was blowing away from the defendant plant. The tide was running north so that the men available were obliged to fend the barge off from the "Montezuma," also lying at the dock.

A heavy electrical storm had been in progress that morning and the barge was probably struck by lightning. The progress of the fire was rapid. However, some ten minutes elapsed before the vessel was cut loose. Although there was ample fire fighting equipment none of the chemicals suitable for fighting an oil fire seems to have been used. The barge, after she was cut loose, drifted towards Prall's Island, and by means of a tugboat was snubbed towards the shore. Drifting away, she was beached at Buckwheat Island, but again breaking loose she drifted into the plaintiffs' docks. Blazing oil, spilling over, caused the damages for which recovery was had.

The learned trial judge found that the defendant was negligent in using a wooden barge for the transportation of such large quantities of inflammable oil; in casting adrift a burning oil barge, and in failing to make any effort to extinguish or control the fire, although facilities for so doing were available; and lastly that it was liable for saving its own property at the expense of the plaintiffs.

Error is assigned because of these findings and in the refusals to nonsuit the plaintiffs or direct a verdict in favor of the defendant.

Appellant urges that the injury suffered was due to accidental means. The proofs, however, seem otherwise. It seems to us impossible that a reasonably prudent man would not have forseen the possibility of harm to his neighbor's property in cutting adrift a burning wooden barge loaded with crude petroleum. No tug could effectively beach her because the spill of oil and the heat were too great for effective handling once she was put into the wind and tide. The cut-

ting adrift of the barge was either a negligent or a deliberate act. The natural and forseeable consequence of such act was the injury complained of. And although the defendant's purpose was no doubt to save its own property and not injure its neighbor's property, still the resulting injuries were the natural and foreseeable consequences of its act.

Tracing back the causation, it is apparent that the nearest culpable cause was the cutting adrift of the burning barge. Of course, the original cause of the fire on the barge was the lightning, but neither that nor the resulting fire was the proximate cause of the damage done, but rather the defendant's act, after ten minutes of deliberation, in cutting loose the burning barge, well knowing that the wind and tide would bring it up somewhere and possibly against some dock or building.

"The proximate cause is the efficient cause—the one that necessarily sets the other causes in operation. *Batton* v. *Public Service Corp.,* 75 *N. J. L.* 857. There must be an unbroken causal connection. The famous Squib case is a familiar illustration. *Scott* v. *Shepherd, 2 W. Bl.* 892. The proximate cause is that cause which naturally and probably lead to, and which might have been expected to produce, the result. *Wiley* v. *West Jersey Railroad Co.,* 44 *N. J. L.* 251; *Smith* v. *Public Service Corp.,* 78 *Id.* 478." *Kelson* v. *Public Service Railroad Co.,* 94 *Id.* 527, 529.

We do not think the trial court erred in finding the defendant guilty of negligence in using a wooden barge to transport volatile oil in a locality congested by shipping and bordered by buildings used for the refinement of oil and the manufacture of chemicals. The evidence well supports the findings of the trial court.

It seems to us that the decision of the trial court may well be sustained on the simple ground—and we so sustain it— that there is evidence that the cutting adrift of the burning barge was a negligent act for which recovery was proper. The evidence shows that instead of fighting the fire with the available apparatus with an offshore wind blowing, the barge was cut loose to drift where wind and tide might carry

it. Such an act is not one we can say the court below should have found was the act of a reasonable and prudent person, bearing in mind all the surrounding circumstances. The action of the wind and tide in carrying the burning barge would not break the causal connection. *The Lords Bailiff, Jurats of Romney Marsh* v. *The Corporation of Trinity House,* 41 *L. J. Exch.* 106.

"In *Scott* v. *Shepherd,* 2 *W. Bl. R.* 892; *Smith L. Cas.* 797, the defendant was held liable for injuries arising from the throwing of a lighted squib, although it had passed through the hands of at least two persons before it exploded, each adding a new propelling force, which the court held was but the continuance of the original wrong, the unlawful throwing of the lighted squib, and that the proximity of defendant's act was not destroyed by what happened between the throwing and the explosion of the squib." *Davenport* v. *McClellan,* 88 *N. J. L.* 653, 654.

It is sufficient to say that there was no prejudicial error in the rulings upon evidence.

The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, DILL, JJ. 15.

*For reversal*—None.