DOWNEY, Judge.
This is a timely appeal from a final judgment in favor of the defendant/appellee, City of Sebastian (City), in an action for damages due to personal injuries sustained when the plaintiff/appellant, Mary Rose Mazzeo, dove from a platform into shallow .water in Swim Lake. The judgment was entered pursuant to a jury verdict which found that there was negligence on the part of the City, but also found that Maz-zeo knew of the existence of the shallow water, realized and appreciated the possibility of injury as a result of diving into the water, and, having had a reasonable opportunity to avoid it, voluntarily and deliberately exposed herself to the danger by diving into the water, thereby barring her recovery as a matter of law under the doctrine of express assumption of risk. Mazzeo also appeals from the trial court’s orders denying her motions to reinstruct the jury regarding assumption of risk, to interview a juror who had advised the clerk that the jury misunderstood the verdict and for a new trial based on the alleged jury confusion.
We hold that no error has herein been demonstrated by the appellate points presented. However, because of the importance of the point involving the doctrine of express assumption of risk we have treated that aspect of the case preparatory to certification to the Supreme Court of Florida.
The factual setting giving rise to this cause of action is a diving accident in Swim Lake, a public recreation park owned and operated by the City. The park contains an artificial lake with an island in the center that can be reached by walking through the water, along with playground equipment, a pavillion, various picnic tables and a wooden dock extending thirty-eight feet out onto the lake. The dock, which is elevated about two and one-half to three feet above the water, was built as a platform to enable people to walk out on the lake rather than for boating, since the lake is too shallow for boating activity. Although “no diving” signs were exhibited in various places from time to time by the City, people occasionally dove off of the dock.
On the date in question, Mazzeo, an experienced swimmer and diver, had been swimming at the point where the accident took place. She had also been seen standing in the water at the end of the dock and, thus, was well aware of the water’s depth. Her boyfriend was trying to teach Mazzeo’s young daughter how to dive, but the child was afraid and would only jump in. The boyfriend then importuned Mazzeo to dive in herself and show the child how to do it — but Mazzeo refused his repeated urgings because she said the water was not deep enough. Finally, Mazzeo agreed to show the child how to dive and, in doing so, broke her neck. At the time of the accident, a somewhat faded “no diving” sign was stenciled on the surface of the dock.
At the trial of this case, the court instructed the jury, among other things:
*1005 On the first offense [sic] the issues for your determination are whether Mary Rose Mazzeo knew of the existence of the danger complained of, realized and appreciated the possibility of injury as a result of such danger, and having a reasonable opportunity to avoid it voluntarily and deliberately exposed herself to the danger complained of.
If the greater weight of the evidence supports the defense of the City of Sebastian then your verdict should be for the Defendant.
The jury returned a verdict in which it found that there was negligence on the part of the City that was the legal cause of Mazzeo’s injuries, but it also found that Mazzeo knew of the existence of the shallow water, realized and appreciated the possibility of injury as a result of diving into the water, and, having had a reasonable opportunity to avoid it, voluntarily and deliberately exposed herself to the danger by diving into the water. The verdict form apprised the jury that, if they found Maz-zeo fully realized the danger involved as set out above, their verdict should be for the City. From a judgment for the City and against Mazzeo the latter has appealed.
Mazzeo summarizes her appellate position in her brief as follows:
The supreme court has held that assumption of the risk has been merged into comparative negligence, except for an express contractual assumption of risk, or where consent is exhibited and relied on by participating in a contact sport. The contact sport exception is premised on Plaintiff’s consent to have other participants (who are relying on such consent) engage him in bodily contact which would be deemed tortious under other circumstances and which may injure him. That rationale is totally absent in this case. The City has never claimed to have relied on the Plaintiff assuming any particular risk. The Florida Supreme Court has not extended the doctrine any farther than the contact sport scenario and has most recently narrowed the doctrine in a premises liability case.
The City, on the other hand, contends that the supreme court did not intend to so delineate the holding of Kuehner v. Green, 436 So.2d 78 (Fla.1983), and cites to a number of district court cases, including one from this court, which support the City’s contention and extend the doctrine beyond contact sports and express contracts not to sue. We believe that this court has aligned itself with those cases supporting the City’s contention that express assumption of risk as a complete defense is not limited to contact sports or express contracts not to sue. Van Tuyn v. Zurich American Ins. Co., 447 So.2d 318 (Fla. 4th DCA 1984). Lest there be any doubt as to this court’s stance, we so align ourselves with that position at this time.
Another district court case very much on point is Robbins v. Department of Natural Resources, 468 So.2d 1041 (Fla. 1st DCA 1985), wherein a teenage plaintiff was paralyzed as a result of a shallow water dive in a public swimming area at Wekiva Springs State Park, operated by the Department of Natural Resources. From a final summary judgment in favor of the department based upon the doctrine of express assumption of risk, the First District reversed, holding the matter was not ripe for summary judgment. In doing so, the court stated:
Appellant urges not only that the defense of express assumption of risk was not properly before the court for summary judgment because not pled, but also that such defense cannot, as a matter of law, be implicated in a case such as this. We disagree with appellant on this point. If the evidence in this case were to be evaluated by a jury under the express assumption of risk criteria approved in Kuehner v. Green, 436 So.2d 78 (Fla.1983), the jury could find the following: (1) that the plaintiff had, in fact, upon his first entry into the water, become fully aware of the shallow depth of the water and the existence of the protruding rocks; (2) that he had been able to see the bottom clearly from the platform; and (3) that he subjectively recognized the risk, but nevertheless proceeded to *1006 execute his dive. Such an aberrant form of participation in the recreational activity of diving would be an appropriate occasion for application of the defense of express assumption of risk, notwithstanding the fact that diving is, of course, not a contact sport and involves no other participants, Gary v. Party Time Co., Inc., 434 So.2d 338 (Fla. 3rd DCA 1983), and that no formal release, consent or waiver form was involved, Kuehner, supra.
468 So.2d at 1043-44 (footnote omitted).
The Third District, in Gary v. Party Time Company, 434 So.2d 338 (Fla. 3d DCA 1983), expressly held that the supreme court did not intend express assumption of risk to be subsumed by the doctrine of comparative negligence except for the two mentioned categories, saying:
The Florida Supreme Court in Blackburn v. Dorta, 348 So.2d 287 (Fla.1977), held that implied assumption of the risk merges into the defense of contributory negligence and the principles of comparative negligence. The court in Blackburn did not reach the issue of express assumption of risk which includes “situations in which actual consent exists such as where one voluntarily participates in a contact sport,” id. at 290. In Strickland v. Roberts, 382 So.2d 1338 (Fla. 5th DCA), review denied mem., 389 So.2d 1115 (Fla.1980), the court labeled contact sports an exception to the merger of contributory negligence with assumption of the risk as set out in Blackburn. The court in Strickland expanded this exception further to include aberrant forms of non-contact sports. We approve that rationale. The aberrant conduct in Strickland was that of an experienced water skier intentionally skiing as close as possible to a stationary dock, which resulted in a collision with a comer piling of the dock.
Dale Gary, an experienced skater and member of a social club encouraging snow skiing, a sport acknowledged to involve an inherent risk of injury, intentionally and voluntarily chose to expose herself to the risks involved in an unsupervised traverse down a ramp while holding a ski pole in either hand. Whether behavior of this nature is characterized as skating, simulated skiing or sports modeling, it is undoubtedly within the class of behavior labeled in Strickland as aberrant and thus outside the Blackburn holding merging assumption of the risk into the principles of comparative negligence.
434 So.2d at 339.
Finally, in Strickland v. Roberts, 382 So.2d 1338 (Fla. 5th DCA), rev. denied, 389 So.2d 1115 (Fla.1980), the Fifth District had occasion to consider the application of the doctrine in the context of a water skiing case. The plaintiff, an accomplished water skier, was injured when he had the tow boat pull him near a dock so that he could swing in close to the dock and spray water on the sunbathers there. He pulled up too late, hit the dock and was injured. In affirming a summary judgment for the defense, the court held:
There was another basis for entry of the summary judgment, although it was not articulated by the trial court. One of the exceptions to the merger of contributory negligence and assumption of the risk set out in Blackburn v. Dorta, 348 So.2d 287 (Fla.1977) is contact sports. Normally, water-skiing would not be considered a contact sport. The uncontro-verted evidence in the instant case, however, is that Strickland was injured while engaged in an aberrant form of the sport: swinging in as close as possible to a stationary dock for the purpose of spraying water on sunbathers. He had frequently engaged in this “sport” — indeed, he had done so on the immediate preceding turn around the lake before his own misjudgment carried him into a comer piling of the dock. There is absolutely no evidence that the manner in which the boat was operated caused the mishap, other than the fact that it furnished Strickland the momentum to play his game. The risk of hitting a dock inheres in the sport of narrowly missing it. Strickland, having assumed the risk *1007 of his game, played it once too often and lost.
382 So.2d at 1340.
From the foregoing analysis of the current authorities it is clear that the courts that have dealt with the question have held that the doctrine of express assumption of risk is applicable generally to cases in which the plaintiff has, with full knowledge of the facts and dangers involved, taken action causing the injury; that the application of the doctrine is not restricted to the two categories of cases mentioned earlier. This pattern of development finds further support in a close reading of Blackburn v. Dorta, 348 So.2d 287 (Fla.1977). Therein, the supreme court stated that:
It should be pointed out that we are not here concerned with express assumption of risk which is a contractual concept outside the purview of this inquiry and upon which we express no opinion herein_ Included within the definition of express assumption of risk are express contracts not to sue for injury or loss which may thereafter be occasioned by the covenantee’s negligence as well as situations in which actual consent exists such as where one voluntarily participates in a contact sport.
Id. at 290 (emphasis added; citation omitted). Thus, the foregoing statement indicates that there are other circumstances besides those mentioned that might be included within the definition of express assumption of risk and there are other situations, besides contact sports, in which actual consent might exist. We believe that the facts of the instant case should fall within the definition because Mazzeo voluntarily exposed herself to the risks inherent in the activity of diving into shallow water.
Since we find no reversible error demonstrated, the judgment appealed from is affirmed. However, because we deem the issue to be of great public importance, we certify the following question:
IS THE DOCTRINE OF EXPRESS ASSUMPTION OF RISK RESTRICTED TO EXPRESS CONTRACTS NOT TO SUE AND CONTACT SPORTS, OR DOES IT ALSO INCLUDE OTHER ACTIVITIES IN WHICH A PERSON, FULLY APPRECIATING THE DANGER INHERENT IN THE ACTIVITY, VOLUNTARILY AND DELIBERATELY PARTICIPATES IN THE ACTIVITY?
LETTS, J., concurs.
STONE, J., concurs in part and dissents in part with opinion.